BAKER, Judge.
 

 This ease is appealed from the County Court at Law No. 2 of Harris County. Appellant was convicted on November 14, 1923 by a jury, upon information and complaint charg
 
 *615
 
 ing him with wife desertion, and his punishment assessed at a fine of one hundred dollars and imprisonment in the county jail for ninety days, from which conviction he has appealed to this court.
 

 Appellant complains of the action of the trial court in admitting over his objection a letter purported to have been written by him to his niece, and the refusal to give his special charges to the jury, and the insufficiency of the evidence to sustain the verdict of the jury. The evidence in the case shows from the State’s Witness, wife of appellant, that she found in the pocket of appellant an old purse with some valentines purporting to be from another woman or girl, of somewhat endearing nature, and that she also obtained from him without his knowledge a letter he had written to his niece requesting that she get or look for, and keep for him, a similar purse, which he inferred he had left in Louisiana. Appellant objected to the introduction of this letter upon the grounds that it did not prove any issue in the case, and was prejudicial. It occurs to us that in view of the testimony of the appellant’s wife as to what he told her about how much he thought of the girl mentioned in the valentines, and who lived in Louisiana where the letter was addressed, and as this letter was supposed to throw light on the appellant’s lack of feeling for his wife, and feeling for this girl supposed to have sent the valentines, it might be construed as a circumstance corroborating her theory of the appellant’s treatment toward her, and would rather go to the weight of the testimony instead of the admissibility of same. However, as the valentines were introduced in evidence without objection upon the part of appellant, and along the same line, the letter would at least be harmless if inadmissible.
 

 Appellant complains of the court’s refusal to give his special charges. The record as we find it fails to disclose any written objections to the court’s general■ charge as required by law, and nothing in the record showing same were presented to the court within the time required by law, and in absence of such objections specifically pointing out objections to the general charge, — and then preparing special charges covering same, such objections would be waived, and we could not consider them even were they the law of the case. Furthermore, this court has held repeatedly that the record should show that the special charges were presented to the court after the evidence is closed and before the court had read his general charge to the jury.
 

 The objection raised by appellant as to the sufficiency of the evidence to warrant the conviction, presents a more serious question. The testimony in the case from the wife of appellant shows, that after she says he told her about thinking more of the Pilizzi girl than he did of her, and after she found the letters and valentines
 
 *616
 
 above mentioned they lived together for some time as husband and wife, then she went and lived with her father because she was mad at him for keeping the valentines and the unkind things he said to her. She also testified that while she and her husband lived at his father’s “I was furnished with all the food and clothing necessary for my comfort, but they treated me unkindly.” She also testified “My husband never treated me cruelty except what he said to me about other women, and not wanting me.” The state’s ease was built practically alone upon the testimony of the wife, in fact wholly so except the letters and valentines mentioned herein. Upon the other hand the appellant testified his wife told him about getting the valentines out of his pocket, but did not do so for quite a while thereafter and not until they moved to the house of his father, and then she was very mad about it, but said nothing about the girl, and that he gave her no cause to leave him so far as he knew, and had always been willing to support her the best he could, and supplied her with all the necessities of life, and tried to get her to return to him, and wanted her to return to him, and was still willing to take her back, and that he never left her, but she left him, and after she left and while he was at work at the bakery he paid her five dollars per week of his wages as long as he worked there, and that he voluntarily paid her five dollars per week while he was working. Appellant’s mother testified that while he and his wife lived with her and her husband she, wife of appellant, was supplied with all the necessities of life, but that she was moody, no good and dissatisfied with her surroundings and wanted pretty clothes and was dissatisfied because she could not get them, and that after she quit her son and went to her father’s, she went to her and tried to get her to come back to appellant and live with them, the parents of appellant, which she refused-to do; that all of her family did all they could to make her house comfortable for her, but that she was irritable and disagreeable, which she supposed was caused by her pregnancy. Mary Domino, sister of appellant, testified she was at her father’s house the day her brother’s wife left her father’s and that appellant’s wife told the witness the' reason she was quitting her husband, he would not buy her stylish clothes. Josephine Collett, sister of appellant, testified that while her brother, appellant, and his wife lived at her house he furnished her a credit account at a grocery store and gave her $3.00 or $4.00 per week cash, and he furnished her with all necessities of life while they lived at her house. The father of appellant testified to his ability to furnish appellant and his wife with the necessities of life, and during the time they lived in his house they were furnished with all the necessities, and that she left his home without cause as far as he knew, and that he told her to make his home her home, and after she left he went and tried to get her to come back to his
 
 *617
 
 house and live there, but she refused to do so, and that he was anxious for her to come to his home and live there with bis son, and that he was able to and was anxious to furnish his son and his wife with all the necessities of life, and that he was able to furnish such necessities for his son and his son’s wife when he was not employed, and she was so furnished by his son and himself while she lived at his home. The testimony above sets out all the material facts in this case.
 

 In the case of Mercardo v. State, 218 S. W. Rep. 491, this court held that to be guilty under.the statutes of this state for desertion, three things must occur:
 

 “(1) That the accused deserted, and neglected or refused to provide for his wife and children under 16 years of age; (2) that such conduct on his part was wilful and without justification; (3) that such wife or children were in destitute or necessitous circumstances at the time. If the testimony failed in any of these requisites, the case is not made.” And after defining “wilful” in its usual terms used in ordinary cases, further states: “But it implies a set purpose or design.”
 

 And this case, supra, was reversed for insufficiency of the evidence. In the case of Davis v. State, 218 S. W. Rep. 493, in a case wherein the facts are somewhat similar to this case under consideration, which cites the Mercardo ease, supra, and which case was reversed on insufficiency of the testimony. The case of Wallace v. State, 210 S. W. Rep. 206, is a case with similar facts to the ease under consideration, wherein this court held that the facts did not show a violation of the law of wife desertion.
 

 After careful consideration of all the facts in this case, we are constrained to hold that the record does not show with that probative force required by the law of this State that the appellant did wilfully desert, neglect and refuse to provide for the support and maintenance of his wife, she being in destitute and necessitous circumstances as alleged, and therefore reverse and remand this case for a new trial, and it is so ordered.
 

 Reversed and remanded.
 

 The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.